UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Armon Bridgemon and Kori Brasfield, | |
| Plaintiffs, | Case No. 1:22-cv-02914 |
| v. | Judge John Robert Blakey |
| CPD Officer Sgt. Joshua R. Bowers, #1244, *et. al.* | |
| Defendants. | |

# MEMORANDUM OPINION AND ORDER

Plaintiffs Armon Bridgemon and Kori Brasfield sue the City of Chicago and Chicago Police Officers Joshua R. Bowers, Evan G. Kilponen, Brian L. Bardsley Jr., Trung B. Nguyen, Marco E. Zenere, Kenneth R. Adair, Keith A. Fleming, Joshua J. Champion, and Robert A. Sekera. [35]. Plaintiffs allege claims for damages under 42 U.S.C. § 1983 pursuant to the Fourth and Fourteenth Amendments for unlawful search and seizure (Count I) and seek damages for Failure to Intervene (Count II). Plaintiffs also allege state law claims for false imprisonment (Count III), negligent infliction of emotional distress (Count IV), and intentional infliction of emotional distress (Count V). *Id.* Defendants move to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* [45]. For the reasons stated below, the Court grants Defendants' motion.

I.  **Plaintiffs' Allegations**

This case arises out of events that took place on February 17 and 18, 2022, in connection with a child-hostage situation. [35] ¶¶ 7, 9. At that time, Plaintiffs lived in an apartment at 1553 West 91st Street in Chicago. *Id*. ¶ 4. Defendants Bowers, Kilponen, Bardsley Jr., Nguyen, Zenere, Adair, Fleming, Champion, and Sekera (collectively, the "Individual Defendants") were members of the City of Chicago's Police Department and special response "SWAT" team. *Id*. at ¶ 5.

On the night of February 17th, Plaintiffs were at home with Plaintiff Bridgemon's brother, Avimalik Bridgemon. *Id*. ¶ 7. Around 9:30 p.m., Plaintiff Bridgemon and his brother decided to leave the apartment because Plaintiff's brother had to go to work. *Id*. As they were exiting the front door of the apartment, the Individual Defendants located on the landing outside Plaintiffs' front door told Plaintiff Bridgemon that he could not leave the building. *Id*. Plaintiff Bridgemon and his brother returned inside to the apartment. *Id*.

At approximately 10:45 p.m., Plaintiffs heard a banging at the apartment's door. *Id*. at ¶ 8. Plaintiff Bridgemon opened the front door and immediately faced approximately six of the Individual Defendants with their guns drawn. *Id*. Defendants told Plaintiff that they needed his apartment to keep tabs on the activities in the apartment across the landing from his, where a child-hostage situation was unfolding. *Id*. For the next five to six hours, various Individual Defendants rotated in and out of Plaintiffs' apartment. *Id*.

Between approximately 2:00 and 3:00 a.m., the Individual Defendants evacuated all occupants from Plaintiffs' building because of the child-hostage situation. *Id.* ¶ 9. After being evacuated, Plaintiffs drove to a family member's home. *Id.* ¶ 10. When they returned, they found their front door open, and their apartment filled with debris. *Id.* ¶ 11.

## II. Legal Standard

Although a complaint need not contain "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), to survive a motion to dismiss under Rule 12(b)(6), it must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. To provide a defendant with "fair notice" of what the claim is and the "grounds upon which it rests," *id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating the complaint under Rule 12(b)(6), the Court accepts all well-pled facts as true and construes all reasonable inferences in the non-moving party's favor. *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016). The Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The moving party has the burden of proof and "must prove entitlement to relief." *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

### III. Discussion & Analysis

The City of Chicago and the Individual Defendants both move to dismiss all claims against them, and the Court considers the arguments as to both below.

#### A. Claims Against the City

As an initial matter, Plaintiffs name the City of Chicago as a defendant in this matter, but do not specify which claims they purport to bring against the City. Apparently, Plaintiffs attempt to hold the City liable for the Individual Defendants' actions. But to assert a claim against the City for § 1983 liability, Plaintiffs must allege that "an official policy" caused the "constitutional deprivation" such that "the tort was committed (that is, authorized or directed) at the policymaking level of government." *Glisson v. Indiana Dept. of Corrections*, 849 F.3d 372, 379 (7th Cir. 2017) (quoting *Vodak v. City of Chicago*, 639 F.3d 738, 747 (7th Cir. 2011)).

Plaintiffs have made no allegations regarding the City of Chicago, including its policymaking procedures, customs, or other official decision-making channels. *See id.* (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

Thus, the Court grants Defendants' motion to dismiss as to the City of Chicago.

#### B. Claims Against the Individual Officer Defendants

##### 1. Body-Worn Camera Footage

Before addressing the Individual Defendants' substantive arguments as to each of Plaintiffs' claims, the Court first considers whether it may properly consider the body-worn camera footage attached as an exhibit to Defendants' motion to dismiss. Generally, in deciding a motion to dismiss, courts cannot consider evidence outside the pleadings. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

4

Defendants argue that the Court may consider the body-worn camera footage because it is incorporated by reference into Plaintiff's complaint.

To properly consider the body-worn camera footage, the footage must be referenced in the complaint and central to Plaintiffs' claims. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (holding courts may consider "documents referenced in the pleading if they are central to the claim" on motion to dismiss); *see also Siguenza v. City of Chicago*, No. 23 C 00033, 2023 WL 6198820, at *2 (N.D. Ill. Sept. 22, 2023) (declining to consider video footage on motion to dismiss "because it was neither attached to nor referenced in the Amended Complaint").

In this case, however, Plaintiffs do not refer to body-worn cameras anywhere in their complaint. Indeed, Plaintiffs claim in their response that they were unaware of the body-worn camera footage until after they filed their complaint. *See* [52] at 3. They also argue that the footage is truncated and omits important details of the Individual Defendants' encounter with the Plaintiffs.

As a result, the Court declines to consider the body-worn camera footage at this stage. *See Brown v. City of Chicago*, 594 F.Supp.3d 1021, 1030 (N.D. Ill. 2022) (declining to consider body-worn camera footage where the footage contained "only select portions of the relevant events from certain individual perspectives"); *see also Felton v. City of Chicago*, 827 F.3d 632, 637 (7th Cir. 2016) (cautioning that "video may not tell the whole story").

**2. Unreasonable Search and Seizure (Count I)**

Plaintiffs bring their first claim under § 1983 against the Individual Defendants for violating their Fourth Amendment right to be free from unreasonable

5

search and seizure. Plaintiffs allege that the Individual Defendants commandeered Plaintiffs' apartment in order to aid their surveillance of the neighbor's apartment. [35] ¶ 15. In large part, Defendants premise their motion to dismiss upon the body-worn camera footage, which this Court has declined to consider.

Nonetheless, the Court finds that Plaintiffs have failed to plead factual allegations sufficient to state a claim under § 1983 for violation of their Fourth Amendment right. The burden is on Plaintiffs to state a claim, and the factual allegations must "provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Thus, Plaintiffs must provide sufficient detail to allege that an unreasonable search or seizure occurred without a warrant or without probable cause. *Turner v. Fallen*, 1992 WL 332312, at *3 (N.D. Ill. Nov. 6, 1992) (citing *Currier v. Baldridge*, 914 F.2d 993, 996 (7th Cir. 1990)).

Plaintiffs' allegations fall short of this standard. The complaint states that "approximately 6 SWAT team members" approached Plaintiff Bridgemon with their guns drawn and informed him that they needed his apartment to monitor the apartment across the landing. [35] ¶ 8. The complaint then notes that "SWAT team members rotated in and out of Plaintiffs' apartment for 5 to 6 hours." *Id.*

The Court cannot infer, from these allegations alone, that the SWAT team members' entrance into Plaintiffs' home was unreasonable or without Plaintiffs' consent. Plaintiffs say nothing about what occurred between the SWAT team's request to enter Plaintiffs' apartment during an emergency and their actual entering. To the extent the body-worn camera footage proffered by Defendants could fill the

gaps in Plaintiffs' allegations, the Court has declined to consider it, and the complaint otherwise provides no facts to support an inference that the officers' entry into the apartment was unlawful. *See Smith v. Village of Broadview*, 2020 WL 3050768, at *11 (N.D. Ill. June 8, 2020) ("[D]rawing reasonable inference on behalf of the plaintiff does not mean the Court may invent facts…that are convenient for the plaintiff.").

Because these allegations contain insufficient detail to support an inference that SWAT team members violated Plaintiffs' Fourth Amendment right by conducting an unreasonable search or seizure, this Court dismisses Count I.

### 3. Failure to Protect (Count II)

Plaintiffs also bring a claim for failure to protect, which they characterize as a failure to intervene, under § 1983. To state such a claim, Plaintiffs "must demonstrate that the Defendants (1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). For Plaintiffs to state a claim for failure to intervene, they must first allege "an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Because Plaintiffs derive their failure to intervene claim from their insufficiently pled Fourth Amendment claim, this derivative claim also fails, and the Court dismisses Count II.

### 4. False Imprisonment (Count III)

Plaintiffs also bring a state law claim against the SWAT team members for false imprisonment. Under Illinois law, false imprisonment "is an unreasonable restraint of an individual's liberty, against his will, caused or procured by the

7

defendant." *Meerbrey v. Marshall Field and Co., Inc.*, 564 N.E.2d 1222, 1231 (Ill. 1990). The "confinement must be against an individual's will; voluntary consent to confinement defeats the claim." *Marsden v. Kishwaukee Cmty. College*, 572 F.Supp.3d 512, 532 (N.D. Ill. 2021).

As with the Fourth Amendment claim, the complaint fails to allege facts sufficient to support an inference of false imprisonment. Plaintiffs allege that Plaintiff Armon Bridgemon and his brother "attempted to exit the front door," but the SWAT team members "informed him that he could not leave the building. Armon Bridgemon and his brother went back into the…apartment." [35] ¶ 7. Again, Plaintiffs' allegations fail to fill in the crucial gaps where a claim might lie. Even drawing all reasonable inferences in Plaintiffs' favor, the Court cannot infer from these facts that the Plaintiff was imprisoned against his will by the SWAT team members during the ongoing emergency.

Thus, the Court dismisses Count III.

### 5. Negligent Infliction of Emotional Distress (Count IV)

Plaintiffs also bring a claim for negligent infliction of emotional distress. But, as Defendants correctly note, public employees, including the SWAT team members, are protected by the Illinois Tort Immunity Act against claims of negligence. 745 ILCS 10/2-202 ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful or wanton conduct.").[1] Because "negligence is by definition a lesser state of mind than willful

---

[1] Plaintiffs failed to respond to Defendants argument on this score and have thus waived any response. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

and wanton, negligence claims are barred by the Illinois Tort Immunity Act." *Prokop v. Hileman*, 588 F.Supp.3d 825, 830 (N.D. Ill. 2022) (citing *Tyagi v. Sheldon*, 2017 WL 4130532, at *20 (N.D. Ill. 2017)).

Thus, the Court dismisses Count IV.

### 6.     Intentional Infliction of Emotional Distress (Count V)

The Defendant Officers next argue that Count V must be dismissed because Plaintiffs' allegations fail to state a claim for intentional infliction of emotional distress. [45] at 14.

To state a claim for intentional infliction of emotional distress, the plaintiff must allege: "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Prokop v. Hileman*, 588 F. Supp. 3d 825, 838 (N.D. Ill. March 2, 2022) (quoting *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017)).

Under Illinois law, "the law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Honaker v. Smith*, 256 F.3d 477, 497 (7th Cir. 2001).  Illinois courts have determined "with some precision the type of emotional distress that is sufficiently severe to meet the law's requirements." *Id.* at 495. Plaintiffs who complain "that a defendant's actions caused them simply to become annoyed, frustrated, stressful, distressed, embarrassed, humiliated, or nervous" fail to state a claim. *Id.* at 496.

9

Plaintiffs' complaint includes no allegations to suggest that the Individual Defendants' conduct was "truly extreme and outrageous." Indeed, the complaint contains few allegations regarding the Individual Defendants' conduct at all. The complaint also contains no allegations that the Individual Defendants acted with the requisite intent to cause (or otherwise knew their actions were likely to cause) severe emotional distress. As a result, the Court agrees with Defendants that the allegations fail to state a claim for intentional infliction of emotional distress.

Likewise, Plaintiffs have not plausibly alleged that Plaintiff Brasfield suffered severe emotional distress as a result of Defendants' actions. The complaint contains no allegations regarding Plaintiff Brasfield's involvement in the events at issue, including her interactions with any of the Defendants. Indeed, the complaint does not even mention Plaintiff Brasfield until Counts IV and V, wherein it merely contains a conclusory assertion that Plaintiff Brasfield suffered emotional distress as a result of "the taking of her apartment." [35] ¶¶ 21, 23. Even then, the complaint only alleges that Plaintiff Brasfield was "uncomfortable around people" after the incident and provides no further allegations regarding the extent or cause of her emotional distress. [35] at ¶ 23. These allegations are insufficient to suggest that Defendants caused her distress or that it was "so severe that no reasonable man could endure it." *Honarker*, 256 F.3d at 497. As a result, the claim fails for this additional reason, and the Court dismisses Count V.

### IV. Conclusion

For the reasons explained above, the Court grants Defendants' motion [45] and dismisses the Third Amended Complaint without prejudice. Plaintiffs may file an

amended complaint by April 15, 2024 if they can, in good faith and consistent with Rule 11, set forth factual allegations to cure the deficiencies discussed above. If Plaintiffs fail to file an amended complaint by this date, the Court will dismiss this case.

Dated: March 25, 2024

Entered:

John Robert Blakey
United States District Judge

11